STATE of Utah, By and Through UTAH STATE DEPARTMENT OF SOCIAL SERVICES and Laura Featherstone, Plaintiffs and Appellants,

v.

Mark Aaron RUSCETTA, Defendant, Third-Party Plaintiff and Respondent,

v.

Laura FEATHERSTONE and Kayanne Featherstone, Third-Party Defendants.

No. 860038–CA.

Court of Appeals of Utah.

Sept. 1, 1987.

David L. Wilkinson, Atty. Gen., Paul M. Tinker, Blaine R. Ferguson, Asst. Attys. Gen., Salt Lake City, for plaintiffs and appellants.

Brian Barnard, Salt Lake City, for defendant, third-party plaintiff and respondent.

Before DAVIDSON, ORME and GARFF, JJ.

DAVIDSON, Judge:

The State of Utah appeals from a paternity action brought for reimbursement of money provided for the benefit of a child allegedly fathered by defendant. The district court found that the State was barred from asserting its claim by the doctrine of res judicata because of a prior default entered against the child's mother and that the State failed to establish a cause of action. The court awarded costs to defendant. Appellant seeks reversal and remand of the case with instructions as to the unavailability of the mother. We affirm in part, and reverse in part.

Laura Featherstone gave birth to a child on September 26, 1980. She received public assistance to pay medical bills associated with the birth and monthly welfare checks afterwards. In order to receive such assistance Laura was required to name the father and to assign her rights to collect child support from that person to the state. The Office of Recovery Services initiated this action by filing a claim against defendant pursuant to Utah Code Ann. § 78–45a–1 (1965) and § 78–45a–5(2) (1975). Defendant filed his answer, denying paternity, and filed a third party complaint against Laura Featherstone seeking a declaratory judgment that he was not the child's father. Laura appeared and answered the complaint.

Upon stipulation of all parties, defendant's third party complaint was dismissed and Laura was joined as co-plaintiff with the State. Defendant took Laura's deposition and sent interrogatories to her. When Laura failed to respond, defendant sought to compel her answers, requesting that her default be entered if she failed to do so. Laura's counsel moved for a protective order in that Laura had moved from Utah, leaving no forwarding address. The court denied the motion for a protective order and ordered responses within 20 days. Defendant sent more interrogatories. Laura's counsel withdrew. Defendant filed a counterclaim against Laura and then filed a motion to enter default against Laura which was granted at a pre-trial conference.

At the trial on the State's claim against defendant, the State attempted to use the deposition of Laura pursuant to Utah R.Civ.P. 32. Defendant's counsel objected to the attempted use of the deposition, alleging lack of proper foundation. The court sustained the objection, requiring "some evidence that she's unavailable." In response, the State proffered a letter from Laura's counsel stating that she had moved and had no intention of returning to Utah for trial. Counsel also made statements of his opinion based upon what he was told by an investigator for the Office of Recovery Services and by Laura's father, both of whom had knowledge from conversations with Laura that she had left the state.[1] The court refused the proffer and the statements, construing them as "double hearsay," requiring a showing of her absence from Utah and her unavailability

---

1. Counsel made no effort to bring any of these people before the court, relying instead on the letter from Laura's counsel and his own representations.

through evidence admissible under the Utah Rules of Evidence.

## RES JUDICATA

The doctrine of res judicata serves to promote finality and stability of judgment and to foster judicial economy by preventing redundant litigation. *Copper State Thrift & Loan v. Bruno,* 735 P.2d 387 (Utah App.1987); *Comm'r of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

Two branches of res judicata have been recognized. The first branch, claim preclusion, operates to bar a second claim between the same parties or their privies concerning the same claim or cause of action previously rendered final by judgment on the merits. Claim preclusion bars claims which *should* have been litigated as well as those actually litigated in the prior action. *Copper State Thrift & Loan,* 735 P.2d at 389; *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 874–75 (Utah 1983); *Krofcheck v. Downey State Bank,* 580 P.2d 243, 244 (Utah 1978).

The second branch, collateral estoppel, involves two different causes of action and only bars those issues in the second litigation necessarily decided in the first. *Copper State Thrift & Loan,* 735 P.2d at 389. The Utah Supreme Court has required four tests for the application of collateral estoppel:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the issue in the first case competently, fully, and fairly litigated?

*Searle Bros. v. Searle,* 588 P.2d 689, 691 (Utah 1978).

In the present case, because defendant's cause of action against Featherstone is different from that of the State's action under the Uniform Act on Paternity, we are concerned with collateral estoppel.

While the first test of collateral estoppel requires that the claims for relief be identical, the critical question is whether the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue involved in the second suit. *Robertson v. Campbell,* 674 P.2d 1226, 1230 (Utah 1983). The case before us fails this test. The only issue actually litigated in the first proceeding was the failure of response by Laura Featherstone upon which default was entered. The issue of paternity involved in the second proceeding by the State was not litigated.

The second test also fails because while the judgment was final, the decision was not rendered on the merits of the case. As a technical legal term, "merits" has been defined as a matter of substance, as distinguished from a matter of form. *Clegg v. U.S.,* 112 F.2d 886, 887 (10th Cir.1940). In the context of res judicata, "merits" has been interpreted to mean real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form. *Id.* at 887. "A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based on ... facts and evidence upon which the rights of recovery depend, irrespective of formal, technical, or dilatory objections or contentions." *Haney v. Neace-Stark Co.,* 109 Or. 93, 219 P. 190, 191 (1923).

Where a claim is dismissed for lack of subject matter jurisdiction, the merits of the claim have not been adjudicated. *Penrod,* 669 P.2d at 877. Default for inaction of a party involves no more discussion of the merits than a judgment based on jurisdiction. Both are matters of form rather than considerations of substance and legal rights. Since the judgment on the prior claim was based solely on the inaction of a party, that judgment was not based on the merits of the claim and therefore cannot be used to bar a second claim on the basis of collateral estoppel.

■ Because the State was not a party in the first claim between defendant and Featherstone, the State must have been in privity with Featherstone to have its claim collaterally estopped. In the context of res judicata, a person "in privity" is one so identified in interest with another that the same legal rights are represented. *Searle*, 588 P.2d at 691. The ability to control the prior representation of these rights, which is emphasized by the Restatement of Judgments § 83 comment a, is necessary to fulfill a function of privity to provide a day in court.

In an action pursuant to the Uniform Act on Paternity, the State has a separate interest from that of the mother. Utah Code Ann. § 78–45a–5(2) (1975) authorizes the State to proceed on its own behalf. The real party in interest therefore is the State. Utah Code Ann. § 78–45b–3(2) (1987) specifically provides that for purposes of prosecuting any action pursuant to the Public Support of Children Act, "the department shall be deemed a real party in interest upon the payment of any support." Laura could not have obtained the payments sought by the State from the defendant because the right to such payments had been assigned to the State upon acceptance of support. *Knudson v. Utah State Dept. of Social Services*, 660 P.2d 258, 260 (Utah 1983). In deciding that the mother is not an indispensable party in a paternity suit by the State, the Utah Supreme Court noted that the State and mother do not share a joint interest because by accepting support on behalf of her child, the mother has assigned to the State the right to collect support. *State v. Toledo*, 699 P.2d 710, 711 (Utah 1985). The State and Laura Featherstone are not in privity because they have separate interests and legal rights over which the other has no control.

The fourth test of collateral estoppel also fails. While the issue of Laura's absence was competently, fully, and fairly litigated in the first proceeding, and a default was properly entered, the issue in this case ·is paternity. This issue could only be reached through the second proceeding since the first was terminated procedurally without reaching the question of paternity. Application of collateral estoppel to bar appellant's claim would violate the basic intent of the law to provide parties a day in court. None of the tests to apply collateral estoppel have been met. We must therefore find that res judicata has no application to this case.

■ Though the trial court erred in application of the doctrine of res judicata, we affirm the dismissal of the suit for failure to establish a cause of action. While Utah R. Evid. 104(a) does not require the court to apply the Rules of Evidence to questions of admissibility of evidence generally, the court is not bound to disregard those rules.[2] By applying the Utah Rules of Evidence to the issue of unavailability of a witness and thereby denying admission of Laura's deposition, the trial judge did not abuse his discretion.[3] Without either the deposition or the testimony of Laura, the State could not establish its case. Therefore, the error in relying on res judicata was harmless.

## COSTS

■ Under Utah R.Civ.P. 54(d)(1) costs against the State of Utah may be awarded only upon express statute or rule allowing such an award. The Uniform Act on Paternity, pursuant to which the State initiated its action against defendant, makes no provision for such an award. Defendant argues that appellant did not properly appeal

**2.** Utah R.Evid. 104(a) states:
Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of Subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

**3.** The trial court, by denying admission to the deposition, did so on counsel's failure to show

the witness was unavailable pursuant to Utah R.Evid. 804:
(a) "Unavailability as a witness includes" situations in which the declarant:
(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.

the issue of costs under Rule 54(d)(2). However, this rule provides a process of review by a trial court of the *amount* claimed to be a party's costs, not a process for appeal of the award.

The judgment of the trial court is affirmed in part, and reversed as to the award of costs to the defendant.

ORME and GARFF, JJ., concur.